**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE SUBPOENA TO<br>SAM KREVLIN<br><br>     Non-Party Movant. | MISC. Case No. 25-376 |
| KENNETH NIXON<br><br>     Plaintiff,<br><br>     v.<br><br>CITY OF DETROIT, DETECTIVE MOISES<br>JIMENEZ, COMMANDER JAMES<br>TOLBERT, DETECTIVE KURTISS<br>STAPLES, SGT. EDDIE CROXTON,<br>OFFICER ALMA HUGHES-GRUBBS,<br>AND OTHER AS-OF-YET UNKNOWN<br>EMPLOYEES OF THE CITY OF DETROIT<br><br>     Defendants. | Civil Action No. 23-cv-11547 (E.D. Mich.) |

**MOTION OF NON-PARTY SAM KREVLIN TO QUASH**
**INDIVIDUAL DEFENDANTS' SUBPOENA TO APPEAR AT DEPOSITION**
**UNDER THE REPORTERS' PRIVILEGE**

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, non-party Sam Krevlin, a former student journalist and resident of New York City, respectfully moves this Court to quash the subpoena *ad testificandum* issued from the Eastern District of Michigan and served on him by defendants Detective Moises Jimenez, Commander James Tolbert, Detective Kurtiss Staples, Sgt. Eddie Croxton, and Officer Alma Hughes-Grubbs (collectively, the "Individual Defendants") in the action *Nixon v. City of Detroit, et al.*, No. 23-cv-11547, pending in the United States District Court for the Eastern District of Michigan. As grounds therefore, Mr. Krevlin relies upon the memorandum of points and authorities and the accompanying declarations and exhibits filed contemporaneously herewith.

Mr. Krevlin also requests reasonable attorneys' fees pursuant to Rule 45(d)(1) of the Federal Rules of Civil Procedure on the grounds that compliance with the Deposition Subpoena constitutes an undue burden.

Pursuant to Local Civil Rule 37.2, Mr. Krevlin attempted in good faith to resolve this dispute informally before the filing of this motion by his counsel participating in numerous meet-and-confer sessions with counsel for the Individual Defendants, both by email and over Zoom. Should an informal discovery conference under Local Civil Rule 37.2 be required, Mr. Krevlin asks the Court hold his motion to quash in abeyance to allow for the completion of the conference.

Dated: September 2, 2025          Respectfully submitted,

ELLENOFF GROSSMAN & SCHOLE LLP

  /s/ Eric Landau
Eric Landau (EL1420)
949 South Coast Drive, Suite 200
Costa Mesa, CA 92626
*elandau@egsllp.com*
(949) 416-3100 / (949) 416-0250 (fax)

John B. Horgan (JH8106)
1345 Avenue of the Americas, 11th Floor
New York, NY 10105
*jhorgan@egsllp.com*
(212) 370-1300 / (212) 370-7889 (fax)

*Attorneys for non-party movant Sam Krevlin*

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE SUBPOENA TO<br>SAM KREVLIN<br><br>　　　Non-Party Movant. | MISC. Case No. 25-376 |
| KENNETH NIXON<br><br>　　　Plaintiff,<br><br>　　　v.<br><br>CITY OF DETROIT, DETECTIVE MOISES<br>JIMENEZ, COMMANDER JAMES TOLBERT,<br>DETECTIVE KURTISS STAPLES, SGT.<br>EDDIE CROXTON, OFFICER ALMA<br>HUGHES-GRUBBS, AND OTHER AS-OF-<br>YET UNKNOWN EMPLOYEES OF THE<br>CITY OF DETROIT<br><br>　　　Defendants. | Civil Action No. 23-cv-11547 (E.D. Mich.) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**NON-PARTY SAM KREVLIN'S MOTION TO QUASH**
**DEFENDANTS' SUBPOENA TO APPEAR AT DEPOSITION**
**UNDER THE REPORTERS' PRIVILEGE**

Eric Landau (EL1420)
ELLENOFF GROSSMAN & SCHOLE LLP
949 South Coast Drive, Suite 200
Costa Mesa, CA 92626
*elandau@egsllp.com*
(949) 416-3100 / (949) 416-0250 (fax)

John B. Horgan (JH8106)
ELLENOFF GROSSMAN & SCHOLE LLP
1345 Avenue of the Americas, 11th Floor
New York, NY 10105
*jhorgan@egsllp.com*
(212) 370-1300 / (212) 370-7889 (fax)

*Attorneys for non-party movant Sam Krevlin*

i

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND ..................................................................................................... 2

JURISDICTION ...................................................................................................... 5

THE SUBPOENA SEEKS INFORMATION PROTECTED FROM DISCLOSURE BY THE
    NEW YORK SHIELD LAW AND FEDERAL REPORTERS' PRIVILEGE ...................... 6

    A.   All of the Information Sought Is Protected by Qualified Privilege .................................... 7

    B.   None of the Information Sought Is "Highly Material and Relevant" to or "Critical or
        Necessary to the Maintenance of" Any Claim or Defense ................................................ 10

    C.   None of the Information Sought Is Of "Likely Relevance to a Significant Issue in the
        Case" ................................................................................................................................ 11

    D.   The Individual Defendants Have Not Demonstrated That They Have Exhausted
        Alternative Sources for the Information Sought ............................................................... 14

    E.   The Court Should Award Mr. Krevlin Reasonable Attorneys' Fees ................................. 16

CONCLUSION ........................................................................................................ 18

ii

## TABLE OF AUTHORITIES

**Cases**

*Aberdeen City Council v. Bloomberg L.P.*,
   688 F. Supp. 3d 169 (S.D.N.Y. 2023) ...................................................................... 12

*Am. Int'l Life Assurance Co. v. Vasquez*,
   No. 02 Civ. 141 (HB), 2003 WL 548736 (S.D.N.Y. Feb. 25, 2003) ........................ 18

*Baker v. F & F Inv.*,
   470 F.2d 778 (2d Cir. 1972) ..................................................................................... 14

*Baker v. Goldman Sachs*,
   669 F.3d 105 (2d Cir. 2012) .......................................................................... 9, 10, 11

*Beach v. Shanley*,
   465 N.E.2d 304,  62 N.Y.2d 241 (1984) .................................................................. 2, 6

*Bradosky v. Volkswagen of Am., Inc.*,
   No. M8–85 (SWK), 1988 WL 5433 (S.D.N.Y. Jan. 15, 1988) ................................ 13

*Breaking Media, Inc. v. Jowers*,
   No. 21 MISC. 194 (KPF), 2021 WL 1299108 (S.D.N.Y. Apr. 7, 2021) ..................... 12, 16, 17

*Brown & Williamson Tobacco Corp. v. Wigand*,
   No. 101678/96, 1996 WL 350827 (Sup. Ct. N.Y. Cty. Feb. 28, 1996) ...................... 8

*Flynn v. NYP Holdings Inc.*,
   235 A.D.2d 907, 652 N.Y.S.2d 833 (1997) ............................................................. 14

*Gonzales v. NBC*,
   194 F.3d 29 (2d Cir. 1998) .................................................................... 7, 8, 11, 15

*Holmes v. Winter*,
   3 N.E.3d 694, 22 N.Y.3d 300 (2013) ............................................................ 2, 6, 17

*In re ABC*,
   189 Misc. 2d 805 735 N.Y.S.2d 919 (Sup. Ct. N.Y. Cty. 2001) ................... 6, 11, 14

*In re Application to Quash Subpoena to NBC* ["*Graco*"],
   79 F.3d 346, 351 (2d Cir. 1996) ................................................................. 1, 11, 14

*In re Behar*,
   779 F. Supp. 273 (S.D.N.Y. 1991) .......................................................................... 11

*In re CBS*,
   232 A.D.2d 291, 684 N.Y.S.2d 443 (1st Dep't 1996) .............................................. 14

*In re Grand Jury Subpoenas Served on NBC*,
   178 Misc. 2d 1052, 683 N.Y.S.2d 708 (Sup. Ct. N.Y. Cty. 1998) ............................ 8

*In re McCray, Richardson, Santana, Wise, & Salaam Litig.*,
   928 F. Supp. 2d 748 (S.D.N.Y.) ..................................................................... passim

iii

*In re Nat'l Broad. Co.*,
   79 F.3d 346 (2d Cir.1996) .................................................................... 13

*In re Pan Am Corp.*,
   161 B.R. 577 (S.D.N.Y. 1993)................................................................ 15

*O'Neill v. Oakgrove Constr.*,
   523 N.E.2d 277, 71 N.Y.2d 521 (1988)........................................... passim

*Pugh v. Avis Rent A Car Sys., Inc.*,
   No. M8-85, 1997 WL 669876 (S.D.N.Y. Oct. 28, 1997) .................... 8, 12

*Reuters Ltd. v. Dow Jones Telerate, Inc.*,
   231 A.D.2d 337, 662 N.Y.S.2d 450 (1st Dep't 1997) ........................... 10

*Saint-Jean v. Emigrant Mortg. Co.*,
   No. 11 Civ. 2122 (SJ), 2015 WL 13735434 (E.D.N.Y. Oct. 7, 2015)....... 16

*Schoolcraft v. City of N.Y.*,
   No. 10 Civ. 6005(RWS), 2014 WL 1621480 (S.D.N.Y. Apr. 22, 2014) ..... 7, 11, 15

*Sikelianos v. City of N.Y.*,
   No. 05 Civ. 7673, 2008 WL 2465120 (S.D.N.Y. June 18, 2008)............. 11

*United States v. Burke*,
   700 F.2d 70 (2d Cir. 1983) ............................................................ 11, 13

*United States v. Cuthbertson*,
   630 F.2d 139 (3d Cir. 1980) ..................................................................... 9

**Statutes**

N.Y. Civ. Rights Law § 79-h ....................................................................... 1

N.Y. Civ. Rights Law § 79-h(b) .................................................................. 6

N.Y. Civ. Rights Law § 79-h(c)....................................................... 1, 5, 6, 14

**Other Authorities**

1990 McKinney's Session Laws, Memorandum of State Executive Department......................... 8

**Rules**

Fed. R. Civ. P. 45(b)(1)................................................................................. 3

Fed. R. Civ. P. 45(c)(2).................................................................................. 3

Fed. R. Civ. P. 45(d) ..................................................................................... 6

Fed. R. Civ. P. 45(d)(1)............................................................................... 16

iv

Non-party movant Sam Krevlin, a resident of New York, through his counsel, respectfully submits this memorandum of law in support of his motion under Fed. R. Civ. P. 45 to quash the subpoena *ad testificandum* (the "Deposition Subpoena") issued from the Eastern District of Michigan in the case entitled *Nixon v. City of Detroit, et al.*, No. 23-cv-11547 (the "Underlying Action") and served on him by defendants Detective Moises Jimenez, Commander James Tolbert, Detective Kurtiss Staples, Sgt. Eddie Croxton, and Officer Alma Hughes-Grubbs (collectively, the "Individual Defendants").

## PRELIMINARY STATEMENT

The Deposition Subpoena must be quashed because all of the information sought in the Subpoena is protected from compelled disclosure by the New York Reporters Shield Law, N.Y. Civ. Rights Law § 79-h.  That statute derives from the First Amendment of the United States Constitution and the Press Clause of the New York State Constitution (art. I, § 8) and provides reporters with an absolute privilege against disclosure of any information received in confidence, including the identity of confidential sources, and a qualified privilege for unpublished newsgathering material, even when it is not otherwise confidential.  To overcome the qualified privilege, the party seeking disclosure bears a heavy burden to clearly show that the information sought is so "critical or necessary" to the case that the party's claim or defense "virtually rises or falls" based on the information, and that the party has "exhaust[ed] all other available sources" for the information.  *In re Application to Quash Subpoena to NBC* ["*Graco*"], 79 F.3d 346, 351, 353 (2d Cir. 1996) (internal citations omitted).  *See* N.Y. Civ. Rights Law § 79-h(c).

All of the information sought by the Deposition Subpoena at the very least falls within the qualified privilege under the Shield Law, *i.e.*, unpublished information about—or obtained during the course of—the newsgathering process.  The Individual Defendants have not made any showing that their defense "rises or falls" based on the information sought in the Deposition

1

Subpoena, which, on its face, is, at best, tangentially related to the dispute in this case. Moreover, there are ample alternative sources for the information. The Individual Defendants admit that they are already in possession of the documents and information about wish they wish to examine Mr. Krevlin. Cumulative evidence that, at most, bears on the general credibility of Mr. Krevlin does not satisfy the Shield Law. *See id.*

Since the information sought by the Individual Defendants is protected under the Shield Law and federal reporters' privilege, Mr. Krevlin should not be required to sit for a deposition that will presumably cover the same privileged topics. As the New York Court of Appeals explained, where "the entire focus" of a reporter's testimony would be on privileged topics, "no legitimate purpose would be served by requiring the witness to go through the formality of appearing [to testify] only to refuse to answer questions concerning the information sought." *Holmes v. Winter*, 3 N.E.3d 694, 706, 22 N.Y.3d 300, 319 (2013) citing *Beach v. Shanley*, 465 N.E.2d 304, 307, 62 N.Y.2d 241, 248 (1984). Indeed, "[c]ompelling a reporter to appear [at a deposition] to respond to a subpoena that seeks information that is clearly cloaked with an absolute privilege can itself be viewed as a significant incursion into the press autonomy recognized in article I, § 8 [of the state constitution] and the Shield Law." *Id*.

## BACKGROUND

From 2015 to 2019, Mr. Krevlin attended the Medill School of Journalism at Northwestern University ("Medill"). Declaration of Sam Krevlin ("Krevlin Decl."), ¶ 2. As a junior, Mr. Krevlin applied and was selected to participate in the Medill Justice Project (the "Project"). *Id*. As part of this journalism course, Mr. Krevlin, along with other Northwestern undergraduate and graduate students, reported on Kenneth Nixon, an incarcerated gentleman who had been claiming innocence in a 2005 homicide in Detroit. *Id*. Project reporting and

investigation were supervised by Medill faculty, and Mr. Krevlin is not the custodian of records for the documents and materials collected.  *Id*.

For the first few months of 2018, and then briefly before the final article was published in the Detroit Free Press, Mr. Krevlin worked on the Project under the supervision of Medill faculty, assisting in gathering documents and interviewing witnesses and others connected to Mr. Nixon and the homicide.  *Id*. at ¶3.  Mr. Krevlin then worked with his classmates and Medill supervisors to draft the article that eventually would be published in the Detroit Free Press (the "Article").  *Id*.

Following the Article's publication, Mr. Nixon was released from prison.  Subsequently, he brought the Underlying Action against the City of Detroit and the Individual Defendants, alleging civil rights violations related to his incarceration.  The City of Detroit has since been dismissed as a defendant.

On March 7, 2025, attorneys for the Individual Defendants emailed a subpoena for production of documents related to the Article ("Production Subpoena") to Mr. Krevlin's email address without Mr. Krevlin's consent in violation of Rule 45(b) of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 45(b)(1); Declaration of Eric Landau ("Landau Decl.") ¶ 2, Ex. 1. The Production Subpoena requested the production of documents more than 100 miles from where Mr. Krevlin resides, is employed, or regularly conducts business in violation of Rule 45(c)(2) of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 45(c)(2); Krevlin Decl. ¶ 1; Landau Decl. ¶¶ 3–5, Exs. 1 & 2.  On March 13, 2025, Mr. Krevlin objected to the Production Subpoena based on the improper service of the Production Subpoena, the improper production requirements, and the federal and state reporter's shield laws, among other objections.  Landau

Decl. ¶ 4, Ex. 2.  Counsel communicated repeatedly, but, after a communication in early April, counsel for the Individual Defendants went dark.  Landau Decl. ¶ 5,

Months later, on August 5, 2025, the Individual Defendants emailed a copy of the Deposition Subpoena to appear at deposition to Mr. Krevlin's counsel.  Landau Decl. ¶ 6, Ex. 3. The Deposition Subpoena purported to demand Mr. Krevlin appear remotely by Zoom at a deposition on August 26, 2025.  *Id.*  The Individual Defendants did not ask for the production of documents in the Deposition Subpoena, only testimony.  Counsel attempted to meet and confer over email to resolve Mr. Krevlin's objections to the Deposition Subpoena based on federal and state reporters' privilege.  Landau Decl. ¶ 7.  Mr. Krevlin, through counsel, asked the Individual Defendants to clarify: (1) the materiality and relevance of the testimony to the issues in the case; (2) why the information was critical or necessary to the case, rather than merely helpful; and (3) what efforts have been made to obtain this information from alternative sources, and why those efforts were not successful.  The Individual Defendants claimed, without authority, that "[t]he shield law may protect news sources but it does not preclude a deposition and does not protect information already disseminated."  Landau Decl. ¶¶ 7–8, Ex. 4.  The Individual Defendants did not address any of the three questions posed by Mr. Krevlin.  *Id.*

On August 18, Mr. Krevlin, through counsel, objected to the Deposition Subpoena, including the grounds that all information the Individual Defendants seek from Mr. Krevlin is privileged under the federal and state reporters' privilege.  Landau Decl. ¶ 9, Ex. 5.

On August 26, counsel met and conferred again by Zoom to discuss and potentially resolve Mr. Krevlin's objections and identify what information the Individual Defendants sought from Mr. Krevlin.  Landau Decl. ¶¶ 7 & 10, Ex. 4.  Counsel for the Individual Defendants identified two topics: the Project's interview with Stanley January, a witness in Mr. Nixon's

homicide investigation, during the newsgathering for the Article, and the source for a document obtained by the Project for the Article. Landau Decl. ¶ 11. Counsel repeated Mr. Krevlin's objections that the reporters' privilege covered any information obtained by Mr. Krevlin about the Project. *Id.* Any of Mr. Krevlin's testimony about the Project is privileged absent a showing that the information is not only "highly material and relevant," but "critically necessary to the maintenance of [the Individual Defendants'] claims and defenses." N.Y. Civ. Rights Law § 79-h(c).

During the Zoom, counsel for the Individual Defendants raised for the first time his belief that New York's reporters' shield law did not apply because, at the time of the Project, Mr. Krevlin was a student at Northwestern University in Illinois and the relevant witness investigation occurred in Michigan. Landau Decl. ¶ 12. Mr. Krevlin, through counsel, invited the Individual Defendants to provide case law supporting this assertion to help resolve at least one aspect of this dispute. *Id.* Counsel for the Individual Defendants refused and stated that he would not conduct any research to support his position. *Id. See also* Landau Decl., ¶ 7, Ex. 4 at p. 1. Counsel for the Individual Defendants did not address Mr. Krevlin's objections under the federal reporters' privilege. Landau Decl. ¶ 13.

### JURISDICTION

This Court has jurisdiction and venue is proper in the Southern District of New York under Rule 45(d)(3)(A) of the Federal Rules of Civil Procedure because the Southern District of New York is the district where compliance with the Deposition Subpoena is required pursuant to Rule 45(c)(1) because Mr. Krevlin is a resident of New York County, New York, which is also the location where he is employed and regularly transacts business.

**THE SUBPOENA SEEKS INFORMATION PROTECTED FROM DISCLOSURE BY THE NEW YORK SHIELD LAW AND FEDERAL REPORTERS' PRIVILEGE**

Under Rule 45(d)(3)(a)(iii), a court must quash a subpoena where it "requires disclosure of privileged or other protected matter." Fed. R. Civ. P. 45(d). The New York Shield Law, or reporter's privilege, protects reporters from compelled disclosure of both confidential information and sources, as well as non-confidential, unpublished newsgathering materials and information, which is precisely what the Individual Defendants seek in the Deposition Subpoena. While now codified in Section 79-h of the Civil Rights Law, the reporter's privilege has its origins in the New York State Constitution's Free Press Provision (art. I, § 8), which provides "the broadest possible protection to 'the sensitive role of gathering and disseminating news of public events.'" *O'Neill v. Oakgrove Constr.*, 523 N.E.2d 277, 281, 71 N.Y.2d 521, 529 (1988) (quoting *Beach*, 62 N.Y.2d at 256 (Wachtler, J., concurring)). Indeed, "New York public policy as embodied in the Constitution and our current statutory scheme provides a mantle of protection for those who gather and report the news – and their confidential sources – that has been recognized as ***the strongest in the nation***." *Holmes*, 22 N.Y.3d at 310 (emphasis added).

Accordingly, the New York Shield Law provides *absolute* protection of information "obtained or received in confidence" by a reporter, as well as for the identity of a confidential source. N.Y. Civ. Rights Law § 79-h(b). The statute also provides qualified protection for non-confidential newsgathering information, which can be overcome only with a "clear and specific showing" that the information is "highly material and relevant," "critical or necessary to the maintenance of a party's claim" and "not obtainable from any alternative source." N.Y. Civ. Rights Law § 79-h(c). The qualified privilege is a stringent one that imposes a "very heavy burden" on any party seeking to overcome it. *In re ABC*, 189 Misc. 2d 805, 808, 735 N.Y.S.2d 919, 922 (Sup. Ct. N.Y. Cty. 2001).

Under the corresponding federal privilege, the Second Circuit also recognizes a qualified reporter's privilege under the First Amendment for both confidential and nonconfidential newsgathering information. *See Gonzales v. NBC*, 194 F.3d 29 (2d Cir. 1998); *Schoolcraft v. City of N.Y.*, No. 10 Civ. 6005(RWS), 2014 WL 1621480 (S.D.N.Y. Apr. 22, 2014). Although the "federal and state policies" on the reporter's privilege are "congruent," the standards for overcoming the privilege are higher when the state Shield Law applies. *Schoolcraft*, 2014 WL 1621480 at *4. Under the federal reporter's privilege, the privilege is qualified for both confidential and non-confidential information. For confidential information, the privilege only can be overcome by the same showing as for *non*-confidential information under the Shield Law. *See Gonzales*, 194 F.3d at 33. For non-confidential information, the party seeking disclosure must show that "(1) 'that the materials at issue are of likely relevance to a significant issue in the case,' and (2) the materials at issue 'are not reasonably obtainable from other available sources.'" *Schoolcraft*, 2014 WL 1621480, at *2 (quoting *Gonzales*, 194 F.3d at 36).

Here, the information sought by the Individual Defendants at the very least is subject to qualified protection as nonconfidential newsgathering information. Because the Individual Defendants cannot meet their "very heavy burden" to overcome the privilege, the Deposition Subpoena must be quashed.

### A.    All of the Information Sought Is Protected by Qualified Privilege

Section 79-h(c) of the Shield Law serves "important interests beyond confidentiality," including "the privacy of editorial processes, the independence of the press and the need to allow the press to publish freely on topics of public interest without harassment and scrutiny by litigants seeking to conduct 'fishing expeditions' into [unpublished] materials in the hope that some relevant information may turn up." *Pugh v. Avis Rent A Car Sys., Inc.*, No. M8-85, 1997

WL 669876, at *5-6 (S.D.N.Y. Oct. 28, 1997).  Courts must exercise "particular vigilance . . . in safeguarding the free press against undue interference," and "prevent[ing] undue diversion of journalistic effort and disruption of press functions."  *O'Neill*, 71 N.Y.2d at 528-29.  *See also Brown & Williamson Tobacco Corp. v. Wigand*, No. 101678/96, 1996 WL 350827, at *3 (Sup. Ct. N.Y. Cty. Feb. 28, 1996) ("Attempts to obtain evidence from [reporters] as nonparties would, if unrestrained, subject news organizations to enormous depletions of time and resources as well as seriously impede their ability to obtain materials from confidential sources."), *aff'd*, 228 A.D.2d 187 (1st Dep't 1996).

Similarly, in recognizing that the reporter's privilege also applies to non-confidential newsgathering information, the Second Circuit has explained the reporter's privilege reflects "broader concerns" beyond the confidentiality of a reporter's sources, noting that the privilege is designed to protect against the burdens that would accrue if it were to become "standard operating procedure for those litigating against an entity that had been the subject of press attention to sift through press files in search of information supporting their claims."  *Gonzales*, 194 F.3d at 35.  The Second Circuit further explained that those harms include "burden[ing] the press with heavy costs of subpoena compliance," increased requests for anonymity from sources anxious to avoid being "sucked into litigation," and "the symbolic harm of making journalists appear to be an investigative arm of the judicial system, the government, or private parties."  *Id.* And New York courts have pointed out that the legislature's express purpose in passing the Shield Law was "to avoid 'problematic incursions into the integrity of the editorial process ....'" *In re Grand Jury Subpoenas Served on NBC*, 178 Misc. 2d 1052, 1054–55, 683 N.Y.S.2d 708, 710-11 (Sup. Ct. N.Y. Cty. 1998) (quoting 1990 McKinney's Session Laws, Memorandum of State Executive Department, p. 2331–32)).  *See also United States v. Cuthbertson*, 630 F.2d 139,

147 (3d Cir. 1980) ("[T]he compelled production of a reporter's resource materials can constitute a significant intrusion into the newsgathering and editorial processes.").

These principles were reaffirmed by the Second Circuit, applying the New York Shield Law, in *Baker v. Goldman Sachs*, 669 F.3d 105 (2d Cir. 2012). There, the plaintiffs sued their financial advisor for allegedly failing to accurately value a company, "L&H," before it merged with the plaintiffs' company. The *Wall Street Journal* had published stories questioning the valuation of L&H that same year, and the plaintiffs sought to depose one of the reporters, Jesse Eisinger, to support their theory that their financial advisor could have and should have done the same degree of investigation into L&H as the newspaper reporters. *See id.* at 108. Mr. Eisinger moved to quash the deposition subpoena, and the district court granted the motion and quashed the subpoena.

In *Baker*, the plaintiffs insisted that the primary purpose of the deposition was to have Mr. Eisinger confirm details contained in the published article. In quashing the subpoena, the district court "found that the scope of questions could not be confined to published information, because even the most basic questions—such as who made the calls and interviewed the Korean companies [that were allegedly L&H customers]—were unpublished details of the newsgathering process." *Id.* at 109. Moreover, in seeking testimony to support their theory of the case, the plaintiffs "inevitably would have to ask questions regarding [the reporter's] techniques for conducting his investigation, the backgrounds of Eisinger's co-authors and the [*Wall Street Journal's*] editorial staff, and whether he consulted with any experts or other sources in the course of the investigation—all inquiries into the newsgathering process protected by the Shield Law." *Id.* (internal quotation marks omitted). Although none of that information was confidential, the court did not hesitate to hold that the "unpublished details of the

newsgathering process" were nevertheless protected by the Shield Law, and because the

testimony was not "critical or necessary" to maintain the plaintiffs' claims, the district court

granted the motion to quash.  *Id*.  The Second Circuit affirmed, quoting the district court's

analysis at length, and explaining that it was "*virtually self-evident* that the Shield Law would

protect Eisinger from compelled testimony."  *Id.* at 110 (emphasis added).

The same principles apply here.  All of the information sought by the Individual

Defendants pertains to either information obtained in the course of newsgathering or

"unpublished details of the newsgathering process."  *Id.* at 109-10.  And because the Individual

Defendants cannot make the clear showing necessary to overcome the qualified privilege to

access this unpublished (even if non-confidential) newsgathering information, the Deposition

Subpoena must be quashed.

### B.    None of the Information Sought Is "Highly Material and Relevant" to or "Critical or Necessary to the Maintenance of" Any Claim or Defense

When a journalist moves to quash a subpoena, the district court must "determine whether

the materials sought are in fact relevant to a legitimate subject of inquiry [and not] permit the

subpoena power to be used as a tool of harassment or for the proverbial 'fishing expedition' to

ascertain the existence of evidence."  *Reuters Ltd. v. Dow Jones Telerate, Inc*., 231 A.D.2d 337,

342, 662 N.Y.S.2d 450, 453-54 (1st Dep't 1997) (quashing non-party subpoena).  Subpoenas

may not simply seek a vague array of information.  "[B]road pronouncements" that fail to

identify "a 'significant issue' in the case that the subpoenaed materials potentially address" are

not sufficient to satisfy this prong.  *In re McCray, Richardson, Santana, Wise, & Salaam Litig*.,

928 F. Supp. 2d 748, 757-58 (S.D.N.Y.), *aff'd*, 991 F. Supp. 2d 464 (S.D.N.Y. 2013).

The "critical or necessary" prong imposes an even higher bar: "[I]n order to find

unpublished news to be critical or necessary within the meaning of § 79–h, there must be a

finding that the claim for which the information is to be used *virtually rises or falls* with the admission or exclusion of the proffered evidence." *Graco*, 79 F.3d at 351 (internal quotation marks and citation omitted) (emphasis added).  "The test is not merely that the material be helpful or probative, but whether or not the defense of the action may be presented without it." *Baker*, 669 F.3d at 108 (quoting *In re ABC*, 189 Misc. 2d at 808 (ellipses omitted and text deleted from quotation restored)); *see also O'Neill*, 71 N.Y.2d at 527 (the material sought must be "essential to the maintenance of the litigant's claim").  By definition, evidence that is merely cumulative "cannot be 'necessary or critical' to an action so as to override the First Amendment privilege." *In re Behar*, 779 F. Supp. 273, 275 (S.D.N.Y. 1991) (citing *United States v. Burke*, 700 F.2d 70 (2d Cir. 1983)).

It is unclear (and the Individual Defendants have refused to explain) how the information and testimony sought in the Deposition Subpoena is "highly material and relevant," let alone "critical or necessary" to any of their claims or defenses.

### C.  None of the Information Sought Is Of "Likely Relevance to a Significant Issue in the Case"

The party seeking disclosure, in this case a deposition, bears the burden to demonstrate that the information sought is of "likely relevance" and goes to a "significant issue" in the case. *Gonzales*, 194 F.3d at 36; *McCray*, 928 F. Supp. 2d at 757–58.  "The relevancy requirement is not met if the information sought in the subpoena is merely duplicative or serving a 'solely cumulative purpose.'" *Schoolcraft*, 2014 WL 1621480 at *3 quoting *Burke*, 700 F.2d at 76. While "this standard is less exacting than that which applies to confidential materials, a litigant seeking nonconfidential materials will not be granted unfettered access." *Id*., quoting *Sikelianos v. City of N.Y.*, No. 05 Civ. 7673, 2008 WL 2465120, at *1 (S.D.N.Y. June 18, 2008).  The "mere belief" that a journalist may have relevant information is insufficient to overcome the

qualified federal reporters' privilege. *Aberdeen City Council v. Bloomberg L.P.*, 688 F. Supp. 3d 169, 183 (S.D.N.Y. 2023).

Here, the Individual Defendants are seeking disclosure of unpublished newsgathering information and reporters' work product, including mental impressions. Qualified privilege clearly applies. *See Breaking Media, Inc. v. Jowers*, No. 21 MISC. 194 (KPF), 2021 WL 1299108, at *4 (S.D.N.Y. Apr. 7, 2021). Yet, the Individual Defendants have failed to identify how the information sought from Mr. Krevlin has any relevance, let alone its likely relevance to a significant issue in the Underlying Action. The interest in Mr. Krevlin's deposition appears to be no more than a "fishing expedition." *Pugh*, 1997 WL 669876 at *5-6.

To the extent the Individual Defendants claim Mr. Krevlin's testimony is required to impeach Mr. January or any other witnesses, the need for such impeachment evidence still does not meet their burden. The district court's reasoning in *McCray* is helpful. The *McCray* plaintiffs were formerly incarcerated and had their convictions vacated. *McCray*, 928 F. Supp. 2d at 751–2. After being freed, they filed a civil rights lawsuit against the city and individual employees of its police department, among others, alleging a conspiracy to perpetrate false evidence to secure their convictions. *Id.* A non-party film company conducted interviews with the plaintiffs, later creating a documentary about their experiences. *Id.* at 752. The *McCray* defendants served a subpoena on the film company seeking copies of unpublished portions of the interviews. *Id.* The film company moved to quash the subpoena, invoking both the New York Shield Law and federal reporters' privilege. *Id.* at 753. Importantly, in *McCray*, the district court evaluated the motion to quash under the Second Circuit's articulation of the reporter's privilege in *Gonzales*, rather than New York's Shield Law, because "the federal and state policies are 'congruent'" and "[b]oth 'reflect a paramount public interest in the maintenance of a

vigorous, aggressive and independent press capable of participating in robust, unfettered debate over controversial matters, an interest which has always been a principal concern of the First Amendment.'" *Id*. at 753.

In *McCray*, defendants argued under the first prong of *Gonzales* that the materials were relevant to witness credibility issues, which they asserted was a significant issue in the litigation. *Id*. at 758. The district court rejected this argument, holding that, even if there were conflicts between the content of the taped interviews and the testimony of witnesses, the defendant already had the published portions of the interviews to use for impeachment and, therefore, any statements in the unpublished portions were cumulative and unnecessary. *Id*. citing *Burke*, 700 F.2d at 78 (noting that because of existing impeachment evidence, the district court properly concluded that subpoenaed Sports Illustrated work papers would be cumulative); *Bradosky v. Volkswagen of Am., Inc*., No. M8–85 (SWK), 1988 WL 5433, at *3 (S.D.N.Y. Jan. 15, 1988) ("even assuming that the specific statements contained in the outtakes would be useful to defendants for impeachment purposes, their usefulness would only be cumulative."). "Moreover, impeachment material is ordinarily not critical or necessary to the maintenance or defense of a claim," and the defendants made "no clear and sufficient showing that it would be here." *McCray*, 928 F. Supp. 2d at 758 citing *In re Nat'l Broad. Co*., 79 F.3d 346, 352 (2d Cir.1996). The district court separately found the defendants failed to meet their burden on the second prong of *Gonzales* (that information was unavailable from another source) because the defendants could depose the plaintiffs to obtain the same information contained in the taped interviews. *Id*. In the end, the *McCray* defendants failed to present the court with "'a concern so compelling as to override the precious rights of freedom of speech and the press' the reporter's

privilege seeks to ensure." *Id*. at 759 quoting *Baker v. F & F Inv*., 470 F.2d 778, 785 (2d Cir. 1972).

Just as in *McCray*, the Individual Defendants are seeking unpublished information underlying the Detroit Free Press Article.  The Individual Defendants have refused to identify the relevance of the information sought to any significant issue in the case.  Rather, the Individual Defendants appear to be either fishing in the hopes of discovering something relevant or are seeking to use the materials for impeachment purposes against Mr. January.  Neither motive meets their heavy burden under the reporters' privilege.

**D.    The Individual Defendants Have Not Demonstrated That They Have Exhausted Alternative Sources for the Information Sought**

Under the Shield Law, New York courts permit "disclosure of non-confidential material only as a last resort."  *In re ABC*, 735 N.Y.S.2d at 921 (emphasis in original).  *See also O'Neill*, 71 N.Y.2d at 526-27 ("[A]ttempts to obtain evidence by subjecting the press to discovery as a nonparty would be widespread if not restricted on a routine basis.").  Thus, to overcome the privilege, even if the "critical or necessary" requirement were met, the party seeking disclosure must make a "clear and specific showing" that the information is "not obtainable from any alternative source," N.Y. Civ. Rights Law § 79-h(c), which requires not only that it "attempted to obtain the information from other sources," but that it "exhaust[ed] all other available sources of information."  *Graco*, 79 F.3d at 353.  *See also In re CBS*, 232 A.D.2d 291, 292, 684 N.Y.S.2d 443, 444 (1st Dep't 1996) ("Notwithstanding [subpoenaing party's] excuses offered to the contrary, no clear and specific showing has been made that the relevant material was unavailable elsewhere."); *Flynn v. NYP Holdings Inc*., 235 A.D.2d 907, 909, 652 N.Y.S.2d 833 (1997) ("Other than stating that the materials are not otherwise available, plaintiff has not detailed any efforts made to obtain the requested documents or the information contained therein.").

*Schoolcraft*, 2014 WL 1621480, at *2 (quoting *Gonzales*, 194 F.3d at 36). *See also In re Pan Am Corp.*, 161 B.R. 577, 585 (S.D.N.Y. 1993) ("At the very least, a party seeking to overcome a constitutional privilege on the basis of necessity must show that it has exhausted all other available non-privileged sources for the information. Here, Pan Am has not even worked up a sweat, much less exhausted itself.").

Here too, the Individual Defendants do not appear to have "worked up a sweat" pursuing other avenues for this information. Even under the less stringent federal reporters' privilege, the Individual Defendants must establish "the materials at issue 'are not reasonably obtainable from other available sources'" and the "exhaustion of all other available sources of information is sometimes required." *Schoolcraft*, 2014 WL 1621480 at *3 (collecting cases).

Based on the facts available to counsel, the Individual Defendants have made some efforts to obtain discovery into the information they seek from Mr. Krevlin. Still, there is no indication they have "exhausted" all non-journalistic sources for the information sought or that the information is not "reasonably obtainable" from other sources. The crux of the issue in the Underlying Action is the alleged failure of the City of Detroit and the Individual Defendants to produce certain documents and information to Kenneth Nixon during his trial. The City of Detroit and Individual Defendants themselves would be the best source of information about their own practices in turning over information to criminal defendants.

To the extent the Individual Defendants are seeking information about the statements of Mr. January during his interview for the Project, such information should be obtained from Mr. January himself. The Individual Defendants have made no showing that they are unable to depose Mr. January to obtain information about the interview. *See McCray*, 928 F. Supp. 2d at 758 (quashing subpoena for copies of unaired interviews in part because the defendants seeking

production failed to establish they could not depose the individuals in the interviews to obtain the information).

Regarding Mr. Krevlin's thoughts, impressions, and sources, the Individual Defendants have admitted that they already possess the information they seek from non-journalistic sources, including recorded phone conversations and public documents obtained through Freedom of Information Act ("FOIA") requests.  Any inquiry into Mr. Krevlin's journalistic thoughts and impressions about this information, including nonconfidential newsgathering information or asking him to reveal the identities of his sources, is prohibited under the Shield Laws.  As the Court of Appeals explained, "[t]he autonomy of the press would be jeopardized if resort to its resource materials, by litigants seeking to utilize the newsgathering efforts of journalists for their private purposes, were routinely permitted." *O'Neill*, 71 N.Y.2d at 526.  Due to the lack of any showing that alternatives to seeking discovery from a reporter have been exhausted, the Deposition Subpoena must be quashed.

### E.    The Court Should Award Mr. Krevlin Reasonable Attorneys' Fees

Rule 45(d)(1) permits the Court to award reasonable attorneys' fees against the party responsible for issuing the subpoena where the party fails to "take reasonable steps to avoid imposing undue burden and expense on the person subject to the subpoena."  Fed. R. Civ. P. 45(d)(1).  "Courts typically undertake a two-part inquiry to determine whether sanctions are warranted under Rule 45(d)(1): '[i] whether the challenged subpoena imposed an undue burden or expense on the person(s) subject thereto; and [ii] if so, what, if any, "reasonable steps" the subpoenaing party and its counsel took to avoid imposing such a burden.'"  *Breaking Media*, 2021 WL 1299108, at *7 quoting *Saint-Jean v. Emigrant Mortg. Co.*, No. 11 Civ. 2122 (SJ), 2015 WL 13735434, at *3 (E.D.N.Y. Oct. 7, 2015).  To satisfy the first prong, courts have

recognized that the "undue burden" analysis is tied to the relevance of the material sought and is directly related to the court's decision to quash a subpoena for imposing an undue burden. *Id*. Under the second prong, courts find a party's refusal to modify a subpoena upon notice of its deficiencies to be unreasonable. *Id*. at *8 (collecting cases).

The award of reasonable attorneys' fees is warranted here. Under the first prong, the materials sought are not relevant to any significant issue in the Underlying Action, and the Individual Defendants have failed to overcome the reporters' privilege. Because "the materials sought are irrelevant to the merits of the [Underlying Action]," Mr. Krevlin "has sufficiently established that compliance [with the Deposition Subpoena] would impose an undue burden." *Breaking Media*, 2021 WL 1299108, at *7. *See Holmes*, 3 N.E.3d at 706 (quashing subpoena and finding that where the entire focus of a reporter's testimony would be on privileged topics, "no legitimate purpose would be served by requiring the witness to go through the formality of appearing [to testify] only to refuse to answer questions concerning the information sought"). The first prong is satisfied.

Under the second prong, Mr. Krevlin notified the Individual Defendants that his documents and testimony were privileged under the New York Shield Law and federal reporters' privilege in March 2025. Landau Decl. ¶ 4, Ex. 2. Despite being on notice of the privilege and having been provided with the case law underpinning Mr. Krevlin's objections five months prior, the Individual Defendants issued the Deposition Subpoena, which suffered from the same defects. The Individual Defendants refused even to research their position that the New York Shield Laws did not apply, despite Mr. Krevlin's request for the grounds for their position. *Id*. at ¶ 12. Where a party refuses to voluntarily withdraw its subpoena following notice that the information sought is privileged, thereby forcing the responding party to move to quash,

17

reasonable attorneys' fees are appropriate. *Am. Int'l Life Assurance Co. v. Vasquez*, No. 02 Civ. 141 (HB), 2003 WL 548736, at *2-3 (S.D.N.Y. Feb. 25, 2003).  The second prong is satisfied, and the Court should award Mr. Krevlin his reasonable attorneys' fees for the cost of bringing this motion.  Mr. Krevlin will submit supporting evidence to establish his fees and costs expended on his behalf after the Court rules on his motion to quash.

## CONCLUSION

The Court should quash the Deposition Subpoena and award Mr. Krevlin reasonable attorneys' fees.

Dated: September 2, 2025

Respectfully submitted,

ELLENOFF GROSSMAN & SCHOLE LLP


_____/s/ Eric Landau_____
Eric Landau (EL1420)
949 South Coast Drive, Suite 200
Costa Mesa, CA 92626
*elandau@egsllp.com*
(949) 416-3100 / (949) 416-0250 (fax)

*Attorneys for non-party movant Sam Krevlin*

The undersigned, counsel of record for non-party movant Samuel Krevlin, certifies that this brief contains ▮▮▮ words, as reported by the word processing program used to prepare this document, which complies with the word limit of L.R. 7.1(c).

Date: September 2, 2025

_____/s/ Eric Landau_____
Eric Landau (EL1420)
ELLENOFF GROSSMAN & SCHOLE LLP
949 South Coast Drive, Suite 200
Costa Mesa, CA 92626
_elandau@egsllp.com_
(949) 416-3102 (direct) / (949) 416-0250 (fax)
