**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE SUBPOENA TO<br>SAM KREVLIN<br><br>    Non-Party Movant. | MISC. Case No. 1:25-mc-00376-MMG |
| KENNETH NIXON<br><br>    Plaintiff,<br><br>    v.<br><br>CITY OF DETROIT, DETECTIVE MOISES<br>JIMENEZ, COMMANDER JAMES TOLBERT,<br>DETECTIVE KURTISS STAPLES, SGT.<br>EDDIE CROXTON, OFFICER ALMA<br>HUGHES-GRUBBS, AND OTHER AS-OF-<br>YET UNKNOWN EMPLOYEES OF THE<br>CITY OF DETROIT<br><br>    Defendants. | Civil Action No. 23-cv-11547 (E.D. Mich.) |

### REPLY BRIEF IN SUPPORT OF
### NON-PARTY SAM KREVLIN'S MOTION TO QUASH
### DEFENDANTS' SUBPOENA TO APPEAR AT DEPOSITION
### UNDER THE REPORTERS' PRIVILEGE

Eric Landau (EL1420)
ELLENOFF GROSSMAN & SCHOLE LLP
949 South Coast Drive, Suite 200
Costa Mesa, CA 92626
*elandau@egsllp.com*
(949) 416-3100 / (949) 416-0250 (fax)

John B. Horgan (JH8106)
ELLENOFF GROSSMAN & SCHOLE LLP
1345 Avenue of the Americas, 11th Floor
New York, NY 10105
*jhorgan@egsllp.com*
(212) 370-1300 / (212) 370-7889 (fax)

*Attorneys for non-party movant Sam Krevlin*

**TABLE OF CONTENTS**

I.    MR. KREVLIN HAS SUFFICIENTLY ESTABLISHED THE APPLICABILITY OF THE
      NEW YORK SHIELD LAW AND FEDERAL REPORTERS' PRIVILEGE ...................... 1

      A.   The Individual Defendants Have Failed to Establish That the New York Shield Law Does
           Not Protect Mr. Krevlin As a Student Journalist ................................................. 1

      B.   The Individual Defendants Have Failed to Establish Mr. Krevlin's Testimony Is Not
           Protected By the Federal Qualified Reporter's Privilege .................................... 3

           1.   The Individual Defendants Have Failed To Establish Mr. Krevlin's Testimony Is
                Relevant to a Significant Issue in the Underlying Litigation .......................... 5

           2.   The Individual Defendants Have Failed to Demonstrate They Have Exhausted
                Alternative Sources for the Information They Seek ...................................... 7

II.   MR. KREVLIN HAS NOT WAIVED HIS REPORTERS' PRIVILEGE OVER
      NEWSGATHERING FACTS AND INFORMATION THAT HAVE NOT BEEN
      PUBLICIZED ............................................................................................. 8

      A.   Mr. Krevlin Is Not Asserting Privilege as to the Specific Information Already in the
           Possession of the Individual Defendants ......................................................... 8

      B.   The Production Subpoena Is Not at Issue ......................................................... 8

III.  THE COURT SHOULD AWARD MR. KREVLIN REASONABLE ATTORNEYS' FEES 9

IV.   CONCLUSION ........................................................................................ 10

## TABLE OF AUTHORITIES

**Cases**

*Baker v. F & F Inv.*,
　470 F.2d 778 (2d Cir. 1972) ................................................................ 2

*Blum v. Schlegal*,
　150 F.R.D 42 (W.D.N.Y. 1993)............................................................ 3

*Branzburg v. Hayes*,
　408 U.S. 665 (1972)............................................................................. 3

*Giuffre v. Maxwell*,
　221 F. Supp. 3d 472 (S.D.N.Y. 2016) ................................................. 4

*Gonzales v. NBC*,
　194 F.3d 29 (2d Cir. 1998) .............................................................. 5, 9

*In re McCray, Richardson, Santana, Wise, Salaam Litig.*,
　991 F. Supp. 2d 464 (S.D.N.Y. 2013) ........................................... 4, 5, 9

*Matter of Holmes v. Winter*,
　3 N.E.3d 694 (N.Y., Dec. 10, 2013) ............................................. 1, 2, 3

*New York Times v. Sullivan*,
　376 U. S. 254 (1964)........................................................................... 2

*Schiller v. City of New York*,
　245 F.R.D. 112 (S.D.N.Y. 2007) ........................................................ 3

*Schoolcraft v. City of N.Y.*,
　No. 10 Civ. 6005(RWS), 2014 WL 1621480 (S.D.N.Y. Apr. 22, 2014) ............................. 6, 9

*von Bulow by Auersperg v. von Bulow*,
　811 F.2d 136 (2nd Cir. 1987) .......................................................... 3, 4

**Statutes**

N.Y. Civ. Rights Law § 79-h ................................................................ 1, 2

N.Y. Civ. Rights Law § 79-h(g) ............................................................... 8

**Other Authorities**

Governor's Approval Mem, Bill Jacket, L 1970, ch 615 at 91, 1970 Legis Ann at 508................ 2

## I.    MR. KREVLIN HAS SUFFICIENTLY ESTABLISHED THE APPLICABILITY OF THE NEW YORK SHIELD LAW AND FEDERAL REPORTERS' PRIVILEGE[1]

The Individual Defendants' rhetoric aside, Opp. at 6-8, Mr. Krevlin has met his burden under the New York Shield Law and the federal qualified reporters' privilege to establish that he was a student journalist working on an investigative journalism project for his journalism school at all times relevant to the investigation into Mr. Nixon's innocence and that he currently resides in New York.  ECF No. 5.  *See also* ECF No. 12-2 at p.8 (Detroit Free Press Article stating that the investigation Mr. Krevlin conducted was part of an investigative journalism course).  The policy undergirding both the New York Shield Law and the federal reporters' privilege is to protect the free press, even student journalists, from intrusions by those who wish to stifle public debate over controversial subjects and those who wish to punish journalists for uncovering inconvenient truths.  Under both the state and federal standards, Mr. Krevlin's newsgathering activities are privileged, and the Deposition Subpoena must be quashed.[2]

### A.    The Individual Defendants Have Failed to Establish That the New York Shield Law Does Not Protect Mr. Krevlin As a Student Journalist

The Individual Defendants argue that the New York Shield Law, N.Y. Civ. Rights Law § 79-h, does not apply because Mr. Krevlin is not a "New York reporter." Opp. at 7 citing *Matter of Holmes v. Winter*, 3 N.E.3d 694, 707 (N.Y., Dec. 10, 2013).  The *Winter* court made no such finding.  In fact, the *Winter* court held the New York Shield Law was binding on New York courts, not New York reporters.  "Information subject to the privilege is 'inadmissible in any

---

[1] This reply brief adopts the same shorthand references defined in Mr. Krevlin's memorandum of law in support of his motion to quash, ECF No. 7.

[2] On the last page of their brief, the Individual Defendants ask the Court to "order [Mr.] Krevlin to comply" with their Production Subpoena by producing responsive documents, Opp. at 15, even though the subpoena at issue only asks for testimony, and the Individual Defendants did not cross-move to compel the production of documents in conjunction with a six-month-old subpoena to which Mr. Krevlin timely objected.

action or proceeding or hearing before any agency.' The Shield Law therefore prohibits *a New York court* from forcing a reporter to reveal a confidential source…" *Id*. at 699 quoting N.Y. Civ. Rights Law § 79-h (emphasis added).  The *Winter* court went further, delving into the legislative history of the statute and finding "it is evident from the approval memorandum that [the New York Governor] and the legislature intended the statute to provide the highest level of protection in the nation: 'This "Freedom of Information Bill for Newsmen" will make New York State—the Nation's principal center of news gathering and dissemination—the only state that clearly protects the public's right to know'" *Id*. at 700 quoting Governor's Approval Mem, Bill Jacket, L 1970, ch 615 at 91, 1970 Legis Ann at 508.

The fact that Mr. Krevlin was attending Northwestern University's Medill School of Journalism in Illinois at the time of his newsgathering does not upset the privilege because the Individual Defendants are asking a New York court to permit his deposition and, in any event, New York and Illinois both favor strong journalist protections.  "New York and Illinois State law… reflect a paramount public interest in the maintenance of a vigorous, aggressive and independent press capable of participating in robust, unfettered debate over controversial matters, an interest which has always been a principal concern of the First Amendment." *Baker v. F & F Inv.*, 470 F.2d 778, 782 (2d Cir. 1972) citing *New York Times v. Sullivan*, 376 U. S. 254 (1964).  Mr. Krevlin is a resident of New York being asked to divulge privileged newsgathering information in New York.  The Individual Defendants have not only failed to present any authority that the New York Legislature did not intend to protect all reporters located in New York, but their own authority supports the application of the privilege. *Winter*, 3 N.E.3d at 699.

The Individual Defendants next argue these privileges apply only to professional journalists.  Opp. at 8.  For this proposition, the Individual Defendants cite a single, thirty-year-

old case which did not reach the issue of whether the New York Shield Law protects only professional journalists, but notes only in *dicta* that such a position "may well be correct," before ultimately choosing to apply the federal reporter's privilege instead and holding that student journalists may invoke the protections of the privilege. *Id*. citing *Blum v. Schlegal*, 150 F.R.D 42, 44 (W.D.N.Y. 1993). *Blum*'s *dicta* does not reflect the current state of the law.

If the Individual Defendants had engaged in "significant research," as they claim, they would have found that this Circuit has expanded the privilege: "'an individual successfully may assert the journalist's privilege if he is involved in activities traditionally associated with the gathering and dissemination of news, even though he may not ordinarily be a member of the institutionalized press.'" *Schiller v. City of New York*, 245 F.R.D. 112, 118 (S.D.N.Y. 2007) quoting *von Bulow by Auersperg v. von Bulow*, 811 F.2d 136, 142 (2nd Cir. 1987). The *von Bulow* court determined that, based on careful analysis, a professional journalist may more easily meet his or her burden to establish the privilege, but, "[t]he burden indeed may be sustained by one who is a novice in the field." *von Bulow*, 811 F.2d at 144. The protection is not limited to "professional journalists." "[T]he protection from disclosure may be sought by one not traditionally associated with the institutionalized press because '[t]he informative function asserted by representatives of the organized press ... is also performed by lecturers, political pollsters, novelists, academic researchers, and dramatists.'" *von Bulow*, 811 F.2d at 144–45 quoting *Branzburg v. Hayes,* 408 U.S. 665, 705 (1972).

**B.    The Individual Defendants Have Failed to Establish Mr. Krevlin's Testimony Is Not Protected By the Federal Qualified Reporter's Privilege**

While Mr. Krevlin maintains his testimony is privileged under the more stringent New York Shield Law, the Individual Defendants cannot meet their burden even under the less stringent federal qualified reporters' privilege because any information they seek from Mr.

3

Krevlin is irrelevant to the claims and defenses in the underlying action, because his testimony would be cumulative of information obtained from non-privileged sources, and because they have failed to establish they have exhausted other avenues to obtain the information sought.

As a threshold issue, the Individual Defendants incorrectly state that Mr. Krevlin has failed to meet his burden to establish that he is a journalist covered by the federal qualified reporter's privilege because his declaration does not use the magic words that the Medill Project had "an intent to disseminate information to the public" at the "inception of the newsgathering process." Opp. at 9 citing *von Bulow*, 811 F.2d at 141 (emphasis omitted). This is not the standard and is a misreading of the Second Circuit's reasoning in *von Bulow*.

In *von Bulow*, the issue before the Second Circuit was whether the party claiming reporter's privilege initially created her investigative reports at the behest of an "intimate friend," who was seeking to vindicate her husband, an admittedly private purpose. 811 F.2d at 145. The Second Circuit found the reports were not created with journalistic intent to disseminate the information to the public, because the "primary relationship" between the witness and wife was a close personal relationship, not a professional or journalistic one. *Id*. at 139. No magic words were necessary.

Moreover, in the forty years since *von Bulow*, the law has progressed, and courts have made clear "the relevant time frame is not when any fact gathering for the subject of the subpoena began, but when the information sought by the subpoena at issue was gathered." *Giuffre v. Maxwell*, 221 F. Supp. 3d 472, 479 (S.D.N.Y. 2016) quoting *In re McCray, Richardson, Santana, Wise, Salaam Litig.*, 991 F. Supp. 2d 464, 467 (S.D.N.Y. 2013). At the time of his interview with Mr. January, Mr. Krevlin was a journalism student participating in an investigative journalism course at a journalism school. ECF No. 5 at ¶ 2. He "applied and was

selected to participate in the Medill Justice Project." *Id.* Under the supervision of journalism professors, he engaged in newsgathering activities such as "gather[ing] documents and interview[ing] witnesses" and "reported on Kenneth Nixon." *Id.* at ¶¶ 2–3. Unlike the third-party *von Bulow* witness who asserted *post hoc* that her private investigations regarding her friend's children should be shielded, the record is clear that Mr. Krevlin acted with journalistic intent throughout the entire investigation.

### 1.    The Individual Defendants Have Failed To Establish Mr. Krevlin's Testimony Is Relevant to a Significant Issue in the Underlying Litigation

The Individual Defendants argue Mr. Krevlin's testimony is relevant to the issue of how Mr. January learned of the firebombing because "the [Wayne County Conviction Integrity Unit] relied upon the interview of Stanley January by [Mr.] Krevlin to justify their order setting aside [Mr. Nixon's] conviction." Opp. at 10. First, this is not true. The record only reflects that the Detroit Free Press article contributed to the CIU's independent investigation; the facts uncovered by the CIU during the course of its independent investigation led a state prosecutor to overturn Mr. Nixon's conviction, and all of the facts are available to the Individual Defendants.

Second, the Individual Defendants' explanation falls far short of even the lower requirements of federal reporter's qualified privilege to establish that Mr. Krevlin's testimony is of "likely relevance" and goes to a "significant issue" in the case. *Gonzales v. NBC*, 194 F.3d 29, 36 (2d Cir. 1998); *McCray*, 928 F. Supp. 2d at 757–58. To start, the Individual Defendants argue, without explanation, that the interview with Mr. January, as reported in the Detroit Free Press, "is one of the primary reasons there even is a case." Opp. at 10. This is not only pure speculation, it belies the record.

To the extent the Detroit Free Press Article was the catalyst to question the veracity of Mr. January's testimony this does not make it the crux of the CIU's recommendation to overturn

5

Mr. Nixon's conviction. The CIU considered conflicting statements from a then-13-year-old witness, conflicting statements from the Individual Defendants themselves, an unredacted memo that was not provided to Mr. Nixon before his trial, other explanations for the accelerants on Mr. Nixon's clothes, and the testimony of a witness who claimed to be with Mr. Nixon at the time of the firebombing. ECF No. 12-7. Detective Weinhart stated that her office looked to "the totality of the circumstance" and then submitted their conclusion to the prosecutor, who "ha[d] the ultimate say" in the case. ECF 12-5 at 21:25-22:3.

The interview, which took place in 2018, is irrelevant to the claims and defenses in the underlying action. According to the evidence presented by the Individual Defendants, Mr. Nixon's conviction was overturned in 2021 following a reinvestigation of his case. It was only after Mr. January recanted his prior testimony in 2022 that Mr. Nixon brought the Underlying Action in 2023, alleging a violation of his civil rights. Opp. Ex. 2 at 14 (Plaintiff's Response to Motion to Dismiss explaining that Mr. January came forward in 2022); Ex. 5 (January Affidavit recanting his former testimony); Ex. 7 at ¶ 63 (Nixon complaint alleging the Cooley Law Innocence Project convinced the CIU to reinvestigate Mr. Nixon's case).

Mr. Krevlin cannot testify to Mr. January's knowledge, only Mr. January can do that. Moreover, Mr. January's statements that he saw the firebomb story on the news were printed *verbatim* in the Detroit Free Press Article. ECF No. 12-2 at p.7. The Individual Defendants already have this evidence in their possession to impeach Mr. January. Any testimony from Mr. Krevlin would simply be cumulative and, thus, irrelevant to the issues. "The relevancy requirement is not met if the information sought in the subpoena is merely duplicative or serving a 'solely cumulative purpose.'" *Schoolcraft v. City of N.Y.*, No. 10 Civ. 6005(RWS), 2014 WL 1621480 at *3 (S.D.N.Y. Apr. 22, 2014).

The Individual Defendants also have the transcript of the conversation between Mr. Krevlin and Detective Weinhart of the CIU. ECF No. 12-5. They already know everything Mr. Krevlin said. Armed with this transcription, the Individual Defendants have more than enough information to impeach Mr. January. Any testimony from Mr. Krevlin would be cumulative of his statements in the transcript with Detective Weinhart.

### 2. The Individual Defendants Have Failed to Demonstrate They Have Exhausted Alternative Sources for the Information They Seek

The Individual Defendants assert "[Mr.] Krevlin was the sole source of the information pertaining to Mr. January's testimony" and that the "first time [Mr. Nixon] saw the unredacted Staples Memo was when Medill obtained it through a FOIA request." Opp. at 4. This is incorrect and misleading. This position fails because the Individual Defendants possess all the evidence they seek or have alternative, non-privileged sources available to obtain the information.

First, regarding the unredacted Staples memo, the Individual Defendants already know where it came from. As they state in their opposition, the Medill Project obtained it from a FOIA request. Opp. at 4. Detective Staples, presumably the author of the memo, is one of the Individual Defendants and would be the best person to ask about the contents of the memo. Additionally, FOIA requests are public information, and the Individual Defendants can serve their own FOIA request on the Detroit Police Department to obtain copies of the Medill FOIA request.

Second, regarding Mr. January's knowledge, the Individual Defendants have admitted they deposed Mr. January and questioned him about his conversation with Mr. Krevlin. ECF No. 12-14 (Excepts from Deposition of Stanley January). This was the time to obtain information about how he learned of the firebombing or to question his signed affidavit stating

7

that his trial testimony was coerced. The Individual Defendants failure to ask better questions at Mr. January's deposition is not Mr. Krevlin's fault and does not provide grounds to invade the privilege. In any event, Mr. January's inconsistent statements are evident from the record. There is no need to involve Mr. Krevlin. All of the information they need has been or should have been obtained through discovery from non-privileged sources.

## II.    MR. KREVLIN HAS NOT WAIVED HIS REPORTERS' PRIVILEGE OVER NEWSGATHERING FACTS AND INFORMATION THAT HAVE NOT BEEN PUBLICIZED

### A.    Mr. Krevlin Is Not Asserting Privilege as to the Specific Information Already in the Possession of the Individual Defendants

The Individual Defendants argue Mr. Krevlin waived the protections of the reporters' privilege by voluntarily disclosing certain information to Detective Weinhart. Opp. at 12-13. However, the New York Shield Law states that any waiver is limited to the disclosure of the "specific information" disclosed to a person not covered by the privilege. Opp. at 12 citing N.Y. Civ. Rights Law § 79-h(g). To the extent any waiver has occurred, the Individual Defendants are in possession of all information Mr. Krevlin provided to Detective Weinhart and any further newsgathering information from Mr. Krevlin would still be protected. Despite the Individual Defendants' claims to the contrary, Mr. Krevlin never sent documents to Detective Weinhart. Offering to disclose is not disclosure, and the Individual Defendants have not provided any authority to the contrary.

### B.    The Production Subpoena Is Not at Issue

Although the Production Subpoena is not before this Court, the Individual Defendants still argue Mr. Krevlin has waived the reporter's privilege because he did not produce a privilege log with his objections. Opp. at 12-13. This argument fails for two independent reasons. One, Mr. Krevlin is not the custodian of records for any of the documents requested by the Individual

Defendants in the earlier (abandoned) Production Subpoena and, on that basis, had no authority to produce them as he explained in his objections.  ECF No. 12-10 at p.3.  The Individual Defendants have repeatedly been informed that Northwestern University is the custodian of these records.  ECF No. 5 at ¶ 2; ECF Nos. 12-10 & 12-12.

Second, Mr. Krevlin complied with his obligations because the Production Subpoena asked for his entire investigative file, all of which falls under the privilege.  The Individual Defendants' fishing expedition into Mr. Krevlin's newsgathering files is invasive of the very privilege the reporters' privilege laws were designed to protect.  *Gonzales*, 194 F.3d at 36; *McCray*, 928 F. Supp. 2d at 757–58.  Mr. Krevlin objected to any disclosure of his newsgathering files and provided the legal grounds for his objection, which the Individual Defendants failed to challenge for over six months, and now do so only obliquely.  Indeed, to require such a log would run contrary to the public policy behind such laws and mean that anyone could obtain a full index of a reporter's files without any of the requisite showing that the records sought were material and relevant to the maintenance of a claim or defense or likely relevant to a significant issue in the case and that the records were unavailable from another source.  *See Schoolcraft*, 2014 WL 1621480, at *5 (finding no waiver of privilege by a reporter who did not produce a privilege log because finding waiver "would serve against the policy reasons for the privilege delineated in *Gonzales*").

## III.    THE COURT SHOULD AWARD MR. KREVLIN REASONABLE ATTORNEYS' FEES

The Individual Defendants state Mr. Krevlin is not entitled to an award of attorneys' fees because the information sought is relevant and because the topics they seek to cover "are no longer privileged."  Opp. at 14.  As detailed above, the Individual Defendants misapprehend the current state of the New York Reporters' Shield Law and the federal qualified reporters'

privilege and have failed to meet their burden under either.  Similarly, the Individual Defendants have failed to establish a wholesale waiver of the privilege.  While the Individual Defendants argue they "conducted significant research on this topic," it is clear from reading their own authorities that Mr. Krevlin's investigative journalism files fall under the privilege.  Offering to reduce the scope of their inquiry to only part of Mr. Krevlin's privileged newsgathering information has not reduced any of the burden on Mr. Krevlin, who has been required to object to three sets of subpoenas and move to quash.  Mr. Krevlin also notes the Individual Defendants' refusal to provide any case law to support their position during their meet and confer sessions, and raising issues related to stale subpoenas, has made this entire process all the more vexing and burdensome.

## IV.    CONCLUSION

The Court should quash the Deposition Subpoena and award Mr. Krevlin reasonable attorneys' fees and costs.

Dated: September 19, 2025              Respectfully submitted,

                                       ELLENOFF GROSSMAN & SCHOLE LLP


                                       ___/s/ Eric Landau_____
                                       Eric Landau (EL1420)
                                       949 South Coast Drive, Suite 200
                                       Costa Mesa, CA 92626
                                       *elandau@egsllp.com*
                                       (949) 416-3100 / (949) 416-0250 (fax)

                                       *Attorneys for non-party movant Sam Krevlin*

The undersigned, counsel of record for non-party movant Samuel Krevlin, certifies that this brief contains 3,013 words, as reported by the word processing program used to prepare this document, which complies with the word limit of L.R. 7.1(c).

Date: September 19, 2025

       /s/ Eric Landau

Eric Landau (EL1420)
ELLENOFF GROSSMAN & SCHOLE LLP
949 South Coast Drive, Suite 200
Costa Mesa, CA 92626
*elandau@egsllp.com*
(949) 416-3102 (direct) / (949) 416-0250 (fax)